UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
--------------------------------------------------------------  x
MICHAEL D. PIRES, SR.,                                          :
                                                                :
                                                                :
                                    Plaintiff,                  :
                                                                :
            v.                                                  :          24-CV-1168 (SFR)
                                                                :
COLLEEN GALLAGHER, et al.                                       :
                                                                :
                                                                x
                                    Defendants.
--------------------------------------------------------------
```

**INITIAL REVIEW ORDER**

The plaintiff, Michael Pires, Sr., is an individual serving a sentence of incarceration in the custody of the Connecticut Department of Correction ("DOC") at Corrigan-Radgowski Correctional Institution ("Corrigan").[1] He is proceeding *pro se* in this civil rights action under 42 U.S.C § 1983 for damages against four defendants: Colleen Gallagher, Acting Warden Oles, Acting Warden Perez, and Regional Chief Operation Officer ("RCOO") and Head Nurse Jennifer Sanchez. Am. Compl., ECF No. 26. After initial review under 28 US.C. § 1915A(a), I dismissed Pires's original complaint without prejudice for failure to state any plausible claims under 42 U.S.C. § 1983. Initial Review Order ("IRO"), ECF No. 25. I afforded Pires the opportunity to file an amended complaint to correct the deficiencies of his claims as identified in the Initial Review Order. *Id.*

---

[1] I may "take judicial notice of relevant matters of public record." *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The DOC website shows that Pires has been serving a sentence since October 13, 2006.

Pires has filed an Amended Complaint seeking damages against Gallagher, Acting Warden Perez, Acting Warden Oles, and Nurse Sanchez. Am. Compl., ECF No. 26. I now consider whether he has alleged any plausible claims under 42 U.S.C. § 1983.[2]

I.    **BACKGROUND**

A.    **Factual Background**

I accept as true the following facts in the Amended Complaint, ECF No. 26.

In August 2023, Pires was housed with Paul Fine in a cell. *Id.* at 9. Due to the size of the cell, Pires and Fine could not avoid contact with one another. *Id.* In addition, the cell toilet overflowed and/or splashed water on the seat and floor whenever flushed. *Id.* at 4-5, 9-10.

On August 8, Fine informed Pires that he had Hepatitis C, and that the doctor had given him a shot for the disease. *Id.* at 5. Pires was concerned to hear this because his mother had warned him about the dangers of this disease. *Id.* at 4.

On August 9, Pires spoke to his daughter about Fine having Hepatitis C. *Id.* On August 10 and 11, Pires's daughter left telephone messages for Colleen Gallagher, a Medical Unit official. *Id.*

On August 14, Pires's daughter spoke with Gallagher about Pires being housed with a cellmate who had Hepatitis C. *Id.* at 4. Gallagher seemed concerned at first and asked if Pires had contacted anyone at the facility; Gallagher indicated that she could call about the situation

---

[2] Pires does not specify whether he sues Defendant in their individual and/or official capacity. I construe his amended complaint to proceed against Defendants, who are all state employees, in their individual capacities only. To the extent Pires seeks monetary damages against Defendants in their official capacities, such claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *see, e.g. Randolph v. Pearson*, 2025 WL 2777074, at *1 (D. Conn. Sept. 29, 2025) (construing plaintiff's section 1983 claims against defendant in his individual capacity only where capacity was not specified in complaint).

but advised that Pires should "go through the chain of command" by writing to Corrigan Head Nurse Sanchez. *Id*. Pires's daughter informed Gallagher that the toilet in Pires's cell was overflowing and a health hazard. *Id*. Pires wrote to Sanchez on August 15, but Sanchez did not respond until September 27. *Id.* at 4-5. Further, Sanchez's response failed to address his issue. *Id.*[3]

Pires's daughter left another message for Gallagher on August 22. *Id.* at 5. Gallagher called her back but stated that she did not know why Pires's daughter kept calling her. *Id.* Gallagher expressed that she did not see anything wrong with the toilet and did not know what Pires's daughter wanted her to do. *Id*. At some point, Gallagher informed Pires's daughter that DOC places individuals with Fine's condition in the general population, despite the known risk of Hepatitis C transmission. *Id.*

On November 30, Fine returned from the Medical Unit. *Id.* He reported that he informed the medical staff that he had Hepatitis C, and that medical staff advised that they had a shot to "make it go away." *Id.*

On December 1, Fine was called to the medical unit to be tested for Hepatitis C, despite his statement that he had the condition. *Id.* Fine told Pires that the doctor looked on the computer, would not tell him what she found, and then sent Fine to UConn Medical for testing. *Id.*

---

[3] Although his allegations are not entirely clear, Pires appears to complain that Acting Warden Perez and Acting Warden Oles did not respond to his administrative remedies within the required time frame. *Id.* at 5.

Both Acting Warden Oles and Perez were aware of Fine's condition but refused to separate Pires and Fine. *Id.* Pires indicates that he made Oles, Perez, and Sanchez aware of his concerns about Fine's Hepatitis C condition through his grievances. *Id.* at 7.

### B.     Procedural History

I presume familiarity with the procedural history of this action as recounted in the Initial Review Order ("IRO"), ECF No. 25. On initial review, I concluded that the Complaint failed to state a claim. IRO 11-12. I dismissed the complaint without prejudice to the filing of an amended complaint. *Id.* at 12. I advised Pires that any "amended complaint must: (1) contain a case caption that names each defendant against whom Plaintiff asserts claims and (2) state facts in the body of the proposed amended complaint describing how each individual defendant acted to violate Plaintiff's rights. In particular, the amended complaint must describe how each defendant acted with deliberate indifference to the risk that Plaintiff would contract Hepatitis C from his cellmate." *Id.* at 11.

On August 28, 2025, Pires timely filed his Amended Complaint. Am. Compl., ECF No. 26. On November 6, 2025, Pires submitted a filing captioned "Motion to Amend." ECF No. 27. I discuss both filings below.

## II.     LEGAL STANDARD

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).[4]

## III.  DISCUSSION

### A.    Scope of Review

I begin by clarifying the record that I have considered in issuing this Initial Review Order. Pires attached to his Amended Complaint a filing captioned "Amended Complaint (To Vacate)", ECF No. 26-1. The attachment largely repeats the facts set forth in the Amended Complaint, together with a litany of concerns regarding the procedural history of this action. Because I previously warned Pires that I would consider only the facts alleged in the Amended

---

[4] My determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment.

Complaint, IRO 11, and the filing in ECF No. 26-1 is otherwise duplicative of the Amended Complaint, I focus on the facts alleged in the Amended Complaint.

Moreover, two months after filing the Amended Complaint, Pires filed what is captioned a "Motion to Amend." ECF No. 27. But this filing does not include a proposed Second Amended Complaint; nor does it include allegations regarding his claim of deliberate medical indifference in violation of the Eighth Amendment. Instead, this filing recites Pires's concerns about the procedural history of this action and explains his belief that Magistrate Judge Farrish is the appropriate jurist to preside over this matter. I therefore deny without prejudice the Motion to Amend.

On prior initial review, I dismissed Pires's claims arising from prison officials' failure to comply with DOC policies or Administrative Directives because a violation of a prison rule does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983. IRO 9-10. I also explained that Pires could not proceed on a damages claim for wrongful incarceration under 42 U.S.C. § 1983 because he had not alleged that his "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 10-11. The Amended Complaint also contains information relevant to Pires's belief that he was wrongfully convicted. *See, e.g.*, Am. Compl. 5 (describing prior proceedings in the District of Connecticut under 28 U.S.C. § 2254). For the same reasons explained in the prior Initial Review Order, I do not consider those allegations because they do not entitle Pires to relief under § 1983.

**B.      Sufficiency of the Eighth Amendment Claims**

In his Amended Complaint, Pires clarifies his allegations about his health concerns due to being housed in the same cell with Fine who reported having Hepatitis C and the health hazard posed by the condition of the cell toilet. Thus, I consider whether Pires may now proceed on any plausible Eighth Amendment claims.

Section 1983 of Title 42 provides that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991)). This is true with respect to supervisory officials as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (stating that a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official liable for damages under § 1983 and

"it is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had").

To show a violation of Eighth Amendment rights for deliberate indifference to health or safety, a plaintiff must allege (1) that he was incarcerated under "conditions posing a substantial risk of serious harm" and (2) the prison official putting him in those conditions was deliberately indifferent to his health or safety. *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To meet this second prong, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)).

In addition, prison officials violate the Eighth Amendment if they are deliberately indifferent to the serious medical needs of a sentenced prisoner. *See Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff must show that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)).

Where a plaintiff asserts claims of deliberate indifference to his safety or medical needs, he must allege facts to suggest that the defendants acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. A defendant must be aware of a substantial risk that the plaintiff would be seriously harmed if the defendant did not act. *See, e.g.*, *Spavone v. N.Y. State Dep't of Corr. Servs*., 719 F.3d 127, 138 (2d Cir. 2013);

*Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012) (*per curiam*); *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*). But "[o]fficials need only be aware of the risk of harm, not intend harm." *Spavone*, 719 F.3d at 138.

I read the Amended Complaint to raise Eighth Amendment concerns about indifference to his risk of harm from exposure to Hepatitis C and unsanitary conditions.

### 1.  Exposure to Hepatitis C

"[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996). Whether a particular danger poses a substantial risk of serious harm in a prison must be evaluated in light of the steps that the facility has already taken to mitigate the danger. *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (considering facility's smoking policy and changes to the prisoner's confinement in assessing risk of harm). I recognize that Pires does not allege Fine was actually diagnosed with Hepatitis C. Nor do any allegations suggest Pires actually contracted Hepatitis C from Fine. However, I conclude—for initial pleading purposes—that Pires's allegations suggest he may have been subjected to a serious risk of harm of contracting Hepatitis C from Fine. Thus, I determine that Pires has satisfied the objective element for purposes of initial review only.

Relevant to the subjective element, Pires alleges that his daughter discussed her concerns about her father's exposure to Fine's Hepatitis C with Gallagher on two occasions, but Gallagher made no effort to alleviate Pires's risk of contracting Hepatitis C from Fine. Am. Compl. 4. Likewise, Pires's allegations suggest that Nurse Sanchez failed to take any responsive action after Pires wrote to her about his risk of contracting Hepatitis C from Fine. *Id.* Accordingly, I will permit Pires to proceed for damages on Eighth Amendment claims

against Gallagher and Sanchez for their deliberate indifference to his medical needs, namely, their failure to mitigate any serious risk of Pires's contracting Hepatitis C from Fine.

As for Acting Wardens Perez and Oles, the Amended Complaint alleges in conclusory terms that Perez and Oles were aware of Fine's conditions but refused to remove Fine from Pires's cell. While conclusory allegations are insufficient to support a claim, *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir. 2002), Pires's allegations indicate that he filed grievances to Oles and Perez about being housed with Fine while he had Hepatitis C. Thus, I construe the Amended Complaint to support at least an inference that Oles and Warden were aware of Pires's risk of harm from being housed with Fine but failed to take any remedial action. At this juncture, I allow Pires to proceed for damages on Eighth Amendment claims against Acting Wardens Perez and Oles for their deliberate indifference to his safety.

### 2.    Toilet

Pires alleges that the toilet in his cell overflowed and/or splashed water on the toilet seat and floor whenever flushed. Thus, I consider whether he was subject to unsanitary conditions that violate Eighth Amendment standards.

Unsanitary conditions in a prison cell, especially when coupled with other mutually enforcing conditions, can rise to the level of an objectively serious constitutional deprivation. *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017); *Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013). A court assesses whether unsanitary condition are objectively severe "according to two components, severity and duration, on a case-by-case basis." *Darnell*, 849 F.3d at 30. There is no "bright-line durational or severity limits in conditions of confinement cases." *Id.* at 31.

Pires asserts that his cell toilet—used by Pires and Fine—overflowed and/or sprayed water on the toilet seat and floor when flushed. Am. Compl. 4-5. These allegations, while thin, support the inference that Pires experienced an objectively serious unsanitary condition of confinement. Pires alleges that Gallagher failed to take any steps to remedy his conditions of confinement after being advised about his exposure to the toilet water. *Id.* at 4. Thus, for initial review purposes, I conclude that Pires's allegations support an inference of Gallagher's indifference to the health hazard posed by conditions caused by the condition of the cell toilet.

Pires has not otherwise alleged facts to support a claim of deliberate indifference to the condition of the cell toilet against the other defendants. Accordingly, I permit Pires to proceed on damages claims for Eighth Amendment violation only against Gallagher due to her deliberate indifference to his unsanitary cell condition of water overflowing or spraying from the toilet.

## IV.    **CONCLUSION**

Consistent with the foregoing, I enter the following orders:

(1) This matter shall proceed to service on the following individual capacity claims: (A) Eighth Amendment deliberate medical indifference to Pires's risk of harm from exposure to Hepatitis C by Colleen Gallagher, Jennifer Sanchez, Acting Warden Oles, and Acting Warden Perez; and (B) Eighth Amendment deliberate medical indifference to unsanitary conditions of confinement regarding a cell toilet by Gallagher.

(2) The Clerk of Court shall verify the current work address for Colleen Gallagher, Jennifer Sanchez, Acting Warden Oles, and Acting Warden Perez with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing this Order and the Amended Complaint [26] to them at their confirmed address by March 20, 2026, and report

on the status of the waiver request on the **thirty-fifth (35th)** day after mailing. If a Defendant fails to return the waiver request, the Clerk shall arrange for in-person individual capacity service by the U.S. Marshals Service on that Defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk shall mail a courtesy copy of the Amended Complaint (ECF No. 26) and this Initial Review Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Once service has been effected upon all defendants, the Court will issue a Scheduling Order setting forth deadlines for Defendants to respond to the Amended Complaint and for discovery.

(5) If Pires changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Pires must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Pires has more than one pending case, he should indicate all the case numbers in the notification of change of address. He should also notify the Defendants or defense counsel of his new address.

(6) Pires shall utilize the Prisoner E-filing Program when filing documents with the Court. He is advised that the Program may be used only to file documents with the Court. Discovery requests shall not be filed with the Court, see D. Conn. L. Civ. R. 5(f), and must be served on Defendants' counsel by regular mail.

**SO ORDERED.**

New Haven, Connecticut
February 27, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge